STATE EX REL. TAYLOR, ET AL. *v*. CIRCUIT COURT OF MARION COUNTY, NIBLACK, JUDGE.

[No. 29,839. Filed November 5, 1959.]

*Leroy K. New* and *Kivett, Bowen, Clancy & Kivett,* both of Indianapolis, for relators.

*Wilbur A. Royse* and *John D. Raikos,* both of Indianapolis, for respondents.

JACKSON, J.—This is an original action, wherein relators seek a writ of mandate and prohibition, commanding the respondent to vacate his temporary restraining order and expunge and vacate his contempt citations issued against relators in the cause below. The issues raised herein are (1) whether the respondent court had initial jurisdiction to invoke a restraining order against the relators who were defendants below; and (2) whether respondent possessed the further power to cite relators for contempt in order to effect enforcement of his order. The factual chronology preceding this petition for extraordinary relief is of primary importance in resolving these issues.

On June 8, 1959, Gwaltney Bros., Inc., general building contractors, filed a "Complaint for Damages and for Injunction" against relators in respondent court. This complaint sought to enjoin relator union from engaging in further organizational picketing at the site of a certain Gwaltney project, and also prayed for punitive damages. The respondent court immediately issued an ex parte restraining order and set a hearing on a temporary injunction for June 17th next.

On June 15th, 1959, before any further proceedings in the respondent court, relators petitioned to remove the Gwaltney suit to Federal Court pursuant to Title 28, section 1441 of the United States Code.

On June 30, 1959, Gwaltney Bros., Inc., filed in respondent court a "Petition for Contempt Citation, for Writ of Attachment and for Rule to Show Cause." This petition alleged that relators had violated respondent's restraining order of June 8, 1959, and enforcement was sought by means of contempt citation. Respondent immediately ordered the arrest of pickets pursuant to a contempt citation issued in support of the initial re-

straining order of June 8, 1959. Thereafter on July 1, 1959, the relators, defendants in the respondent court below, filed a "Special Appearance of Counsel, Motion to Dismiss Cause of Action Herein and to Vacate Temporary Restraining Order for Lack of Jurisdiction and to Purge Defendants of Contempt." This motion was taken under advisement by the respondent pending ruling by the Federal District Court upon the question of removal. On July 8, 1959, respondent issued what it termed a direct contempt and body attachment against one of the attorneys representing relators. Subsequently the district court denied jurisdiction and remanded the cause.

Another contempt petition was filed by the plaintiff, Gwaltney Bros., Inc., on August 19, 1959, again seeking to effect abatement of picketing by relators according to the terms of the initial restraining order which was now over two months old. The cause came to this court by petition for mandate and prohibition filed on August 21, 1959. A temporary writ was issued the following day.

This resume of the proceedings brings the case up to date.

The question of whether or not the respondent court possessed initial jurisdiction to issue a temporary restraining order requires an examination of our state labor laws, particularly the Anti-Injunction Act, Acts 1933, ch. 12, §§1 to 14, p. 28, being §§40-501 to 40-514, Burns' 1952 Replacement. In their complaint for injunctive relief against picketing, plaintiff, Gwaltney Bros., Inc., attempted to ignore the issue of an existing labor controversy. The complaint alleged the creation and existence of a nuisance in the form of picketing, and the pleading was framed in this context according to Acts 1881 (Spec. Sess.), ch. 38, §709, p. 240, being

§2-505, Burns' 1946 Replacement, which provides for a statutory cause of action to abate "Whatever is injurious to health, or indecent, or offensive to the senses, *or an obstruction to the free use of property, . . .*" (Emphasis supplied.) The plaintiff attempted to plead around the labor dispute, predicating his cause of action upon the alleged fact that the picketing created a nuisance according to the statute in so far as it constituted "an obstruction to the free use of property."

It is quite true that in the nascent stages of the labor movement all organized activity by labor was classed as "prima facie tort," either nuisance, conspiracy or interference with trade and business. *Vegelahn* v. *Gunter* (1896), 167 Mass. 92, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. Rep. 443; *Iverson* v. *Dilno* (1911), 44 Mont. 270, 119 Pac. 719. Even prior to the "prima facie tort" doctrine labor activity was deemed to be a criminal conspiracy at common law. *Journeyman Cordwainers' Case* (1809), Yates Sel. Cas., N. Y. 112. However the classic dissent of Chief Justice Holmes in *Plant* v. *Woods* (1900), 176 Mass. 492, 505, 57 N. E. 1011, 51 L. R. A. 339, 79 Am. St. Rep. 330, was a harbinger of the new era of labor regulation. The *Plant* case clung staunchly to the "prima facie tort" theory in holding that organized trade union activity was unlawful *per se,* but Justice Holmes did not acquiesce in this view. Rather he held it to be "lawful for a body of workmen to try by combination to get more than they now are getting, . . . and to that end to strengthen their union by the boycott and the strike." That there may be valid socio-economic justification for certain organized labor activity was the basic premise upon which Holmes relied to deny the stigma of conspiracy which had theretofore attached to the whole union movement. So today when a union seeks to organize a shop, when there is

picketing, strike, boycott, etc., these activities are no longer classed as tortious or criminal. Rather they are treated as incidents of a "labor dispute," and as such are regulated and adjudicated according to the labor laws and not the criminal law or the law of torts. The law of labor regulation has come into its own as an independent body of law.

The case at hand involves organizational picketing by the relator trade council. Such activity indicates the existence of a labor dispute. In *Local Union 135, etc.* v. *Mdse. Whse. Co., Inc.* (1956), 127 Ind. App. 57, 61, 132 N. E. 2d 715, the court held that "a union's attempt to organize a group of employees and the unwillingness of such employees to be organized constitutes a labor dispute." Acts 1933, ch. 12, §13, p. 28, being §40-513(c), Burns' 1952 Replacement, broadly defines a labor dispute in much the same terms:

"Definitions of terms—When used in this act [§§40-501—40-514], and for the purpose of this act:

"(a) . . .

"(b) . . .

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

"(d) . . ."

The pleading of a pretended nuisance and the prayer for injunctive relief from alleged tortious conduct cannot suffice to deny the existence of such a controversy.

Having determined that the case involves labor trouble, more particularly organizational picketing and a

complaint for injunctive relief therefrom, we must look to the Anti-Injunction Act, Acts 1933, ch. 12, §1, p. 28, being §40-501 *et seq.*, Burns' 1952 Replacement, a statute which the plaintiffs below chose to ignore:

"Issuance of injunctions restricted.—No court of the state of Indiana, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this act [§§40-501—40-514]; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this act."

Cursory examination of this section would lead to the apparent conclusion that the respondent court was without jurisdiction of the case since there was a labor dispute involved and the plaintiff was seeking an injunction. However, Acts 1933, ch. 12, §7, p. 28 being §40-507(e), Burns' 1952 Replacement, is determinative of this issue of initial jurisdiction. Where there is a bona fide labor dispute, injunction may issue only upon certain limited statutory grounds,[1] otherwise the court is without jurisdiction. However there is a

---

1. "40-507—Injunctions—Testimony and basis for issuing temporary restraining order—Bond.—No court of the state of Indiana shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect:

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained . . . ;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; and

"(d) That complainant has no adequate remedy at law;

"(e) . . ."

proviso to the statutory requirement of specific conditions which must prevail precedent to the granting of injunctive relief in a labor dispute. The act further provides in Acts 1933, ch. 12, §7, p. 28, being §40-507 (e), Burns' 1952 Replacement,

". . . Provided, however, That if a complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a temporary restraining order shall be effective for no longer than five [5] days. . . ."

As we read this exception it means that in all cases of labor controversy the court acquires jurisdiction under the act if there is a verified allegation in the complaint that "substantial and irreparable injury to complainant's property will be unavoidable" unless a temporary restraining order is issued. However, the act also provides that before such an order can issue testimony under oath "sufficient, if sustained," to justify the issuance of a temporary injunction upon a hearing after proper notice, must be heard by the court. Acts 1933, ch. 12, §7, p. 28, being §40-507 (e), Burns' 1952 Replacement. *Bartenders, etc. Union* v. *Clark Restaurants* (1952), 122 Ind. App. 165, 102 N. E. 2d 220.

An examination of the complaint in the instant case convinces us that it is sufficient to invoke the provisions of the act (Acts 1933, ch. 12).

However, the record here fails to disclose that testimony was heard as required by the statutes. For that reason the restraining order issued June 8, 1959, was invalid and void. Had the restraining order been lawfully issued it would have been unen-

forceable and void after five days in view of the clear language of the above statute.

Having disposed of the issue of jurisdiction the collateral issue of contempt is readily resolved. It is well established that a void order can not be the basis of a citation for contempt. *State ex rel. A.B.C.* v. *Sup. Ct., Vanderburgh Co.* (1951), 229 Ind. 483, 99 N. E. 2d 247; *State ex rel. McMinn* v. *Gentry* (1951), 229 Ind. 615, 100 N. E. 2d 676; *Burns* v. *Huffman* (1914), 181 Ind. 591, 105 N. E. 148; *State ex rel.* v. *Marion Circuit Court* (1943), 221 Ind. 572, 49 N. E. 2d 538; *State ex rel. Miller* v. *Kroger, Sp. J., etc.* (1957), 236 Ind. 190, 139 N. E. 2d 170; *Doench* v. *Doench* (1938), 214 Ind. 559, 16 N. E. 2d 877, 118 A. L. R. 1134. Hence respondent court was without jurisdiction to issue the contempt citations on June 30, 1959, July 8, 1959, and August 19, 1959.

The Temporary Writ of Mandate and Prohibition heretofore issued by this court on August 22, 1959, is now made permanent.

Arterburn, Bobbitt and Landis, JJ., concur; Achor, C. J., concurs in result.

NOTE.—Reported in 162 N. E. 2d 90.