TEAMSTERS LOCAL #297 OF FT. WAYNE, INDIANA ET AL. *v.* AIR-FLOW SHEET METAL, INC.

[No. 368A43. Filed October 4, 1968. No Petition for Rehearing filed.]

*Edward J. Fillenwarth, Edward J. Fillenwarth, Jr., Fillenwarth & Fillenwarth,* of counsel, of Indianapolis, for appellants.

*Frank A. Higgins, Larry T. Miller, William Swift* and *Higgins & Swift,* all of Fort Wayne, for appellees.

BIERLY, J.—This is an appeal from an Interlocutory Order and judgment of the Superior Court of Allen County, Indiana, entered on the 13th day of February, 1968, temporarily enjoining defendants (appellants) from illegal picketing of plaintiff (appellee) until the final hearing of the cause.

Appellants contend the trial court did not have jurisdiction of the subject matter of this action, and, hence, the granting of a temporary injunction by the trial court was contrary to law.

We have not been favored by appellee filing an answer brief. Our courts have numerous times set forth the consequences resulting from such failure to file an answer brief.

In *Mucker, Adm. etc. v. Pub. Serv. Comm. of Ind.* (1959), 129 Ind. App. 455, 157 N. E. 2d 308, it was stated:

"It is well settled in Indiana that the neglect of the appellee to file a brief controverting the errors complained of by an appellant may be taken, or deemed to be a confession of such error or errors, and that the judgment may accordingly be reversed and the cause remanded without prejudice to either party. This rule was not declared in the interests of an appellant but for the protection of the Supreme and Appellate Courts, in order to relieve said Courts of the burden of controverting the arguments and contentions advanced by appellant for reversals where such duty properly rests upon counsel for the appellee.

\* \* \*

"The rule will not be invoked unless the appellant's brief makes an apparent or prima facie showing of reversible error."

See also: *Young, et al. v. Schreiner* (1959), 130 Ind. App. 39, 161 N. E. 2d 611; *Pittsburgh etc., R. Co. v. Linder* (1925), 195 Ind. 569, 145 N. E. 885; *Reed, Admr. v. Brown* (1939), 215 Ind. 417, 19 N. E. 2d 1015.

This court likewise is not unmindful of the obligations resting upon appellant on appeal as specifically set forth in *N.Y. Central Ry. Co. v. Milhiser* (1952), 231 Ind. 180, 106 N. E. 2d 453, as follows:

"It has been held many times that all reasonable presumptions are indulged on appeal in favor of the rul-

ings and judgments of a trial court, that the record must exhibit errors for which the reversal is sought, and that a court of appeals will not presume anything in favor of appellant to sustain his alleged error" (numerous cited cases omitted).

Two important factors must receive our careful consideration in this appeal, to-wit:

1. Was a labor dispute involved?

2. Was violence either threatened or actually involved in the picketing of appellee's premises by the pickets?

We consider it necessary to evaluate the evidence in the determination of this appeal.

Air-Flow Sheet Metal, Inc., appellee, is a corporation organized under the laws of Indiana, engaged in sheet metal business since 1945, and at the time of this action had approximately 75 employees. Of this number, 72 or 73 of such employees were members of the Sheet Metal Workers Local Union #156, the sole union as of September 20, 1967, identified with appellee. Said corporation had 25 employees in its Fort Wayne plant, and 23 of said 25 members were Union members.

The parties stipulated that appellee is engaged in interstate commerce according to the definition of said term in Section 2 (6) and (7) of the National Labor Relations Act as amended.

The subject of this controversy, one Clinton Doctor, had been employed by appellee for 10 or 11 years, and had performed various assigned duties as directed by the President of appellee, and by the shop superintendent.

In January, 1967, a business representative of Local No. 297 contacted Clinton Doctor concerning a suggested application for membership in Teamster Local Union No. 297. Thereafter, late in September, Mr. Doctor telephoned Local Union No. 297, identified himself as a driver for appellee, and asked instructions as to steps to be taken to become a

member of said union. He was informed that he would be required to sign an application card for membership. Following a conference with various officials of Local Union No. 297, at which time Mr. Doctor was informed and agreed to pay the initiation fee as a consideration for membership in the sum of $75.00, and also agreed that his employer was authorized to deduct said fee out of his check. Mr. Doctor signed both the application for membership and authorized his representation by Teamsters Local No. 297 on September 30, 1967. On this same date, Mr. Doctor also signed a "Check-Off Authorization". This authorized the appellee to perform functions agreed upon between Mr. Doctor and the Teamsters Union #297.

On October 4, 1967, representatives of Local No. 297 called upon a Mr. Johnson of the appellee to examine and sign a contract submitted to the appellee by the union. Such a contract had been negotiated by Teamsters Local #297 with "Associated Building Contractors" of Fort Wayne, of which organization the appellee was not a member. Appellee had heretofore signed an agreement with Sheet Metal Workers Local Union 156, but had employed many persons other than Sheet Metal Workers, and was reluctant to sign such "Associated Building Contractors'" contract. No negotiations were had relative to the terms of the contract as it was presented for the signature of the representative of the appellee.

It appears that at the time of proposing of the contract to Mr. Johnson, the union and its representative was representing Clinton Doctor, since he had signed the application for membership. Mr. Johnson informed the officials of the union that Mr. Doctor as a member of the Teamsters Union would be out of work as only 20 hours of work could be given him as a driver. This conclusion was also confirmed by a Mr. Ehrman who was employed by appellee.

At a later date but prior to October 11, 1967, Mr. Johnson had discussed with Clinton Doctor about his membership in

the Teamsters Union. This was following the signing of the application for membership by him. After October 4, 1967, repeated telephone calls were made to Mr. Johnson to learn if appellee was willing to sign the proposed contract. Evidence by Mr. Doctor disclosed that on or about October 5, 1967, he called the office of the union and attempted to revoke his application for membership in the Teamsters Union, and reported that Mr. Johnson was going to curtail his employment to 20 hours per week, which limited employment would be insufficient to meet his living expenses.

Further efforts were made by representatives of the union to induce Mr. Johnson of the appellee to sign the contract proffered but on October 29, 1967, in the absence of Mr. Johnson, Mr. Ehrman of the appellee, informed representatives of the union that appellee would not sign the proposed contract. This development led Mr. Rice and Mr. Jacquay, as representatives of Local No. 297, to begin picketing the premises of appellee on October 11, 1967, for a contract and for failure to comply with the union's demands. While some employees crossed the picket line on October 11, and 12, 1967, they refused to work, hence the Fort Wayne plant of appellee was unable to operate.

Testimony by representatives of appellee was to the effect that the picketing was conducted in a normal and peaceful manner.

Testimony was to the effect that on October 11, 1967, the day the picketing began, at about 4:00 p.m., Mr. Johnson and Frank Higgins, attorney for appellee, discussed with Clinton Doctor, whom appellee believed to be the only person involved in leading to the initiation of the strike, relative to his application for membership in the Teamsters Union, and what might be done so appellee would be able to begin production. Mr. Johnson told Mr. Doctor there was no objection to his joining the union if he so desired, but his concern was primarily that the picketing cease so the operation of the plant

could be resumed. Appellee further testified that the proposed contract created an unlawful situation because the contract provided that an employee must become a member of the union, which would be in all probability a violation of federal law if appellee would sign a contract compelling or coercing an employee to join a union.

On the same date of October 11, 1967, Clinton Doctor addressed a communication relative to his application for membership in Teamsters Local Union No. 297, to a Mr. Rice, President of said union, which reads as follows:

"Flatrock Road
Hoagland, Indiana
October 11, 1967

"Merlin A. Rice, President and
Business Manager, Teamsters
Local #297
P. O. Box 7
3601 New Haven Avenue
Fort Wayne, Indiana

"Dear Mr. Rice:

"Please be advised, as you have heretofore orally been, that my application to your Union for membership is hereby formally withdrawn. At the present time I do not wish to join Teamsters Local #297, nor do I want that Union to represent me in negotiations or bargaining with my employer, Air-Flow Sheet Metal, Inc.

"Yours very truly,
/s/ CLINTON DOCTOR
"Clinton Doctor"

Appellants devoted 7 pages in its brief in reviewing the testimony relative to the circumstances leading up to the preparation, the signing or purported signing by Clinton Doctor of Plaintiff's Exhibit #2, the purported notice to the President and Business Manager of Teamsters Local #297, advising the withdrawal of his application for membership in the union.

As heretofore stated, the trial court, on February 13, 1968, issued a "Temporary Injunction" which reads as follows:

"Having had plaintiff's petition for injunction to prevent strikers from illegal picketing under advisement, the Court now grants a temporary injunction to Plaintiff and against defendant, hereby enjoining defendants from illegal picketing of plaintiff until the final hearing of this cause, or the further order of this Court."

In appellant's appeal from an interlocutory order in which the trial court granted a temporary injunction to the appellee, it was stated that all questions to be discussed by the appellants in their brief may be considered under the assignment of errors that "the trial court erred in granting a temporary injunction to the appellee." Appellants cited *Goldsmith et al. v. City of Indianapolis et al.* (1935), 208 Ind. 465, 196 N. E. 2d 525; and *Smith etc. v. Markun, et al.* (1954), 124 Ind. App. 535, 119 N. E. 2d 899, as cases supporting the principle to all questions to be discussed that may be presented under the Assignment of Error set forth above. We agree.

Many authorities are cited by appellants that the proceeding before the trial court involved a labor dispute within the provisions of Chapter 12, Sections 1-14, p. 28, Acts of the General Assembly (1933), and that Section 10 of said Acts bestows jurisdiction of the appeal; that the Appellate Court should set aside and reverse the trial court.

Appellants further assert that appellee's allegations in the "Petition for Injunction to Prevent Strikers from Illegal Picketing" involved Clinton Doctor in the proceeding as a member of Local Union No. 297. The evidence introduced as heretofore shown bore out that the dispute revolved about Clinton Doctor in the signing of the application for membership and subsequent withdrawal, or attempt to withdraw, from the union.

From the petition, *supra,* it is shown that the picketing of appellee on the dates specified, involved a demand by the union that appellee enter into a collective bargaining agreement, and also enter into a contract that was submitted to

the appellee for signing. Appellee refused to sign, thereby precipitating a picket line and picket sign indicating a failure of appellee to be in compliance with the demand of the union that the profferred contract be signed.

In the case at bar, we have a "labor dispute" involved within the meaning of the terms and provisions of Burns' Ind. Stat. 1965 Replacement, Vol. 8, Part 1, Sections 40-501 to 40-514, commonly known as the Anti-Injunction Act. In Section 40-513, point C, the Act defines the term "labor dispute" as follows:

> "(C) The term "labor dispute" includes any controversy concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer or employee*." (Our emphasis.)

We are of the opinion that when considering the allegations of the petition, the evidence introduced by the appellee in support of such allegation, and in light of statutory law, plus decided cases in connection therewith, the picketing involved in the case at bar involved a "labor dispute" as such is now known in law.

We are of the opinion that the trial court lacked jurisdiction to render the decision of February 13, 1968, in the form of a temporary injunction in favor of appellee; since the enactment of the National Labor Relation Act as amended by Congress has preempted the field of labor management relations that are involved in interstate commerce to the exclusion of the several states; that said National Labor Relation Act conferred upon the National Labor Relation Board and upon the Federal Courts exclusive jurisdiction as to matters involving labor-management relations in interstate commerce, and since appellee was engaged in interstate commerce within the meaning of the National Labor

Relation Act as amended, the appellants were enjoined from allegedly doing something which the National Labor Relation Act expressly proscribed, therefore, the court was without jurisdiction to render the decision as of February 13, 1968; that as a further reason the trial court was without jurisdiction to render the decision on said date as appellee was engaged in interstate commerce, and the trial court enjoined appellants from doing "something which is arguably or reasonably cognizable as an unfair labor practice act under the provisions of the National Labor Relation Act, as amended". (Appellants brief, p. 40). *Garner, et al. v. Teamsters, Chauffeurs and Helpers Local Union No. 776* (1951), 62 Dauph 339, 21 Labor Cases ¶67, 035; *Brand, et al. v. John C. Groub Company, Inc.* (1959), 129 Ind. App. 469, 157 N. E. 2d 836, and many other cited cases.

The trial court erred in the issuance of the temporary injunction as of February 13, 1968, in favor of the appellee, since the proceeding before the trial court involved a labor dispute as that term is defined by Chapter 12, Sections 1-14, p. 28, of the 1933 Acts of the General Assembly, and said court failed to follow the provisions of said Act in these respects, to-wit: 1) The Court failed to make or enter any findings of fact; 2) Did not enjoin or prohibit any specific acts as specifically set forth in any finding of fact; 3) Failed to require the filing of a bond with adequate security before the issuance of said temporary injunction. Acts of Indiana General Assembly of 1933, Chapter 12, p. 28, Sections 1, 7 and 9; Burns' Indiana Statutes, Sections 40-501, 40-507, 40-509; *Blackburn et al. v. Koehler, etc.* (1957) 127 Ind. App. 397, 140 N. E. 2d 763.

As heretofore stated, it was stipulated that appellee was engaged in interstate commerce. The appellee, in addition thereto, alleged in its petition in rhetorical paragraph 12 thereof, the defendants were picketing employer, appellee, "to bring pressure, duress, and coercion upon Clinton Doctor", one of its employees, to join defendant's union.

According to the testimony and evidence, the proposed contract submitted to appellee did contain the so-called designated "union shop clause" which required all members or employees to become members of the union. Appellee refused to sign, as heretofore pointed out.

We are of the opinion that failure to meet the requirement of Section 8 of the Indiana Injunction Act, Burns' Ind. Stat., (1965 Replacement) Vol. 8, Part 1, § 40-508, which is as follows:

"No restraining order of injunctive relief shall be granted to any complaint who has failed to comply with any obligation imposed by law which is involved in the above dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration",

inasmuch as petitioner made no allegation in the petition that it did anything or made any effort to comply with said Section 40-508 aforesaid, nor does the evidence show that petitioner made any effort to so comply, and appellee failed to assist in any manner to attempt settlement of the labor dispute.

Section 8 of the Norris-LaGuardia Act, and Sections 1, 7 and 9, of the Acts of Indiana General Assembly of 1933, Chapter 12, p. 28, and Burns' 40-501, 40-507 and 40-509, respectively, are very specific, clear, and definite in requiring a trial court to make findings of facts, require a bond, and must enjoin only specific act or acts as set forth in findings of fact, when there is a proceeding for a temporary injunction in a labor dispute. In the case at bar, the court neither made any findings of fact, nor was anything specifically prohibited. The court, in its decree and judgment, "enjoined defendants from illegal picketing of plaintiff until final hearing of said cause", without specifying what was illegal picketing.

Finally, we are of the opinion that the trial court erred in granting the temporary injunction since appellee presented no evidence as to any damages sustained as a consequence of the picketing, even though some of the employees may have crossed the picket line and refused to work.

We conclude and state that since the granting of the preliminary injunction the picketing has been peaceful and without violence; that a labor dispute exists; and that appellee as stipulated is engaged in interstate commerce. Thence, these facts being established, the United States Government has preempted and occupied the field of labor management-relations to the exclusion of the individual states. *Brand et al. v. John C. Groub Co., Inc. etc.* (1959), 129 Ind. App. 469, 157 N. E. 2d 836.

For the reasons given above, The Allen County Superior Court, Rm. No. 1, had no jurisdiction to act on the question which appellee sought to present by its complaint.

This cause is, therefore, remanded to the said Allen County Superior Court, Rm. No. 1, to dissolve the temporary injunction and for further proceedings in accordance with this opinion.

Pfaff and Smith, JJ., concur.

Cook, P.J., not participating.

NOTE.—Reported in 240 N. E. 2d 830.