INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS ET AL. *v.* McGILL MANUFACTURING CO., INC.

[No. 3-974A153. Filed June 2, 1975. Rehearing denied July 17, 1975. Transfer denied December 18, 1975.]

322

Robert F. Wagner, Lewis, Bowman, St. Clair, Bennett & Wagner, of Indianapolis, for appellants.

George W. Douglas, Douglas, Douglas, Douglas, of Valparaiso, for appellee.

STATON, P.J.—On August 1, 1974, a labor dispute commenced at McGill Manufacturing Company, Inc. (McGill) when the company reached an impasse in its efforts to negotiate a new collective agreement with Local 1227, International Association of Machinists and Aerospace Workers (the Union). On the seventh day of the dispute, August 7, McGill filed an action for a temporary restraining order and preliminary injunctive relief against certain picketing activity near the main gate of its Electrical Division in Valparaiso, Indiana. After hearing the testimony of a McGill official, the trial court issued an order granting an *ex parte* temporary restraining order enjoining the Union and its individual members from committing the following acts:

"a.) By mass picketing, blocking the public entrance to Plaintiff's Electrical Division Plant on Campbell Street, Valparaiso, Indiana.

b.) By force and intimidation and by standing on the entryway, blocking the entrance to Plaintiff's Plant and preventing the ingress and egress thereto of vehicles through the Plant's main gate at Campbell Street, Valparaiso, Indiana." Record at 18.

On August 16, the trial court held an adversary hearing to determine whether the temporary restraining order should be dissolved or converted into a preliminary injunction. At the hearing, the Union moved to dismiss the suit for lack of subject matter jurisdiction, asserting that the jurisdictional prerequisites of the Indiana Anti-Injunction Act had not been satisfied. The trial court denied the Union's motion to dismiss

and entered a preliminary injunction, which enjoined the same conduct proscribed by the prior temporary restraining order.[1] The Union has appealed from this interlocutory order, pursuant *to Indiana Rules of Procedure, Appellate Rule* 4(B)(3).

As a preliminary matter, McGill contends that the trial court's temporary restraining order is not subject to appellate review because it is not the type of interlocutory order from which a direct appeal may be initiated under Appellate Rule 4(B). It is well established that a temporary restraining order is not an "appealable order"; such tentative judicial action does not impart that degree of finality sufficient to justify immediate appellate intervention. *See, e.g., State ex rel. Board of Medical Registration and Examination* v. *Hayes* (1950), 228 Ind. 286, 91 N.E.2d 913; *Town of Wakarusa* v. *Bechtel* (1948), 226 Ind. 101, 78 N.E.2d 161. The policy advanced by this limitation on the appealability of interlocutory orders cannot serve as an independent ground for circumscribing the scope and subject matter of appellate review. McGill's argument confuses the concept of appealability, which functions solely as a limitation on appellate jurisdiction, with the concept of reviewability, which focuses on whether a particular type of judicial action is amenable to appellate examination. The trial court's entry of an appealable order will subject the entire proceeding to appellate scrutiny, in the absence of some distinct procedural or substantive limitation on reviewability. McGill's somewhat novel contention is clearly refuted by a recent decision of this Court. In *Smith* v. *State Board of Health* (1974), 159 Ind. App. 360, 307 N.E.2d 294, this court, in the course of deciding an interlocutory appeal from the granting of a preliminary injunction, fully considered the procedural requirements applicable to the issuance of a temporary restraining order. Since McGill has been unable to demonstrate the existence of any substantive or procedural limitation on this Court's power

---

1. The trial court's order was styled "Temporary Injunction". *See Indiana Rules of Procedure, Trial Rule* 65(A).

to review non-appealable temporary restraining orders, we will review this proceeding in its entirety.

Whenever equitable relief is sought in the context of a controversy involving labor relations, the trial court must initially inquire whether the Indiana Anti-Injunction Act has withdrawn the court's jurisdiction to grant the desired remedy. IC 1971, 22-6-1-1 to 12 (Burns Code Ed.). The Anti-Injunction Act provides:

"No court of the state of Indiana, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this act [22-6-1-1—22-6-1-12]; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this act."

The term "labor dispute" includes ". . . any controversy concerning terms or conditions of employment, . . . ." IC 1971, 22-6-1-12(C) (Burns Code Ed.). The allegedly unlawful collective action proscribed by the trial court was engaged in during the course of a strike, which began when McGill and the Union failed to execute a new bargaining agreement. Since the picketing enjoined by the trial court arose in the context of a "labor dispute", the validity of the trial court's equitable intervention is governed by the Anti-Injunction Act. *See, e.g., Anderson Fed. of Teachers* v. *School City of Anderson* (1970), 252 Ind. 558, 254 N.E.2d 329; *Blackburn* v. *Koehler* (1957), 127 Ind. App. 397, 140 N.E.2d 763.

The primary focus of the Anti-Injunction Act is the minimization of judicial control over conduct related to labor disputes. In order to effectuate this policy, the Act transforms a request for injunctive relief by a party to a labor dispute into a special statutory proceeding; the statute establishes a complex set of procedural requirements which strictly circumscribe the equity jurisdiction of trial courts. IC 1971, 22-6-1-1 and 6 (Burns Code Ed.); *State ex rel. Taylor* v. *Circuit Court of Marion County* (1959),

240 Ind. 94, 162 N.E.2d 90; *Roth* v. *Local No. 1460 of Retail Clerks Union* (1939), 216 Ind. 363, 24 N.E.2d 280; *Peters* v. *Poor Sisters of St. Francis* (1971), 148 Ind. App. 453, 267 N.E.2d 558; *Teamsters Local No. 297* v. *Air Flow Sheet Metal, Inc.* (1968), 143 Ind. App. 322, 240 N.E.2d 830. Section 7 of the Act, IC 1971, 22-6-1-6, which specifies these numerous jurisdictional limitations, provides:

"No court of the state of Indiana shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, *except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court* to the effect;

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted [more] injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; and

(d) That complainant has no adequate remedy at law;

(e) That the public officer charged with the duty to protect complainant's property are [is] unable or unwilling to furnish adequate protection. Such hearings shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officers of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property; Provided, however, That if a complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining

order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a temporary restraining order shall be effective for no longer than five [5] days and shall become void at the expiration of said five [5] days." (emphasis added).

Under section 7 of the Act, a plaintiff seeking injunctive relief must affirmatively invoke the court's jurisdiction by a verified complaint which alleges all of the factual assertions enumerated by the statute. *State ex rel. Taylor* v. *Circuit Court of Marion County* (1959), 240 Ind. 94, 162 N.E.2d 90; *Bartenders, Hotel & Restaurant Employees Union, Local 103* v. *Clark Restaurants, Inc.* (1951), 122 Ind. App. 165, 102 N.E.2d 220. The particularized pleading requirements of special statutory proceedings constitute a recognized exception to the liberal "notice pleading" standard of *Indiana Rule of Procedure, Trial Rule* 8(A). *See, e.g., Squarcy* v. *VanHorne* (1975), 163 Ind. App. 64, 321 N.E.2d 858. Moreover, section 7 imposes additional procedural constraints on the trial court's power to grant injunctive relief; the trial judge is mandated to require the party seeking an injunction to adduce testimony in open court, in support of each material allegation of his complaint. The trial court must also enter specific findings of fact which clearly disclose the existence of each of the factual elements enumerated in section 7. In addition, section 9 of the Act requires the trial court to enter its written findings into the record of the proceedings prior to the issuance of any injunctive order. Section 9, IC 1971, 22-6-1-8, provides in part:

"No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the records of the case prior to the issuance of such restraining order or injunction. . . ."

These procedural limitations on the trial court's power to grant injunctive relief in the context of a labor dispute were

intended by the Legislature to operate as a "safety valve" against hasty and ill-considered judicial intervention into labor-management contests.[2]

In support of its contention that McGill's verified complaint was patently insufficient to confer jurisdiction upon the trial court, the Union focuses on McGill's failure to allege that the police were unable or unwilling to protect its prop-

---

2. Mr. Justice Frankfurter's seminal study on the use of the injunction in labor disputes observed:

"The history of the labor injunction in action puts some matters beyond question. In large part, dissatisfaction and resentment are caused, first, by the refusal of courts to recognize that breaches of the peace may be redressed through criminal prosecution and civil action for damages, and, second, by the expansion of a simple, judicial devise to an enveloping code of prohibited conduct, absorbing, *en masse*, executive and police functions and affecting the livelihood, and even lives, of multitudes. Especially those zealous for the unimpaired prestige of our courts have observed how the administration of law by decrees which through vast and vague phrases surmount law, undermines the esteem of courts upon which our reign of law depends. Not government, but 'government by injunction', characterized by the consequences of a criminal prosecution without its safeguards, has been challenged.

. . . .

Improvident denial of the injunction may be irreparable to the complainant; improvident issue of the injunction may be irreparable to the defendant. For this situation the ordinary mechanics of the provisional injunction proceedings are plainly inadequate. Judicial error is too costly to either side of a labor dispute to permit perfunctory determination of the crucial issues; even in the first instance, it must be searching. The necessity of finding the facts quickly from sources vague, embittered and partisan, colored at the start by the passionate intensities of a labor controversy, calls at best for rare judicial qualities. It becomes an impossible assignment when judges rely solely upon the complaint and the affidavits of interested or professional witnesses, untested by the safeguards of common law trials—personal appearances of witnesses, confrontation and cross-examination.

But the treacherous difficulties presented by an application for an injunction are not confined to the ascertainment of fact; the legal doctrines that must be applied are even more illusory and ambiguous. Even where the rules of law in a particular jurisdiction can be stated, as we have tried to state them, with a show of precision and a definiteness of contour, the unknowns and the variables in the equation—intent, motive, malice, justification—make its application in a given case a discipline in clarity and detachment requiring time and anxious thought. With such issues of fact and of law, demanding insight into human behavior and nicety of juristic reasoning, we now confront a single judge to whom they are usually unfamiliar, and we ask him to decide forthwith, allowing him less opportunity for consideration than would be available if the question were one concerning the negotiability of a new form of commercial paper. We ease his difficulty and his conscience by telling him that his decision is only tentative. FRANKFURTER & GREENE, THE LABOR INJUNCTION 200-02 (1929)."

erty. McGill's complaint averred that members of the Union were depriving McGill of access to its plant by engaging in mass picketing and other unspecified acts of force and intimidation at the plant's main public entrance. Section 7 of the Act mandates the complainant to plead and prove "[t]hat the public officer charged with the duty to protect complainant's property are [is] unable or unwilling to furnish adequate protection." In *Weist* v. *Dirks* (1939), 215 Ind. 568, 20 N.E. 2d 969, the Supreme Court held that the allegation and proof of the inability or unwillingness of the police to protect a complainant's property could be dispensed with only when the unlawful acts charged do not include ". . . any acts of violence or trespass against which a policeman or peace officer has power or authority to protect the plaintiff's property, . . . ." 215 Ind. at 571, 20 N.E.2d at 970. The limited exception to section 7 created by *Weist* is applicable only when the picketing sought to be enjoined is allegedly unlawful because it constitutes a type of tortious conduct which is not proscribed by criminal sanctions. McGill's complaint, however, contained allegations of physical force and mass picketing. Moreover, the unlawful conduct alleged by McGill can not be characterized as merely tortious, but rather constitutes a clear violation of a provision of Indiana's criminal law. IC 1971, 35-15-4-1, Ind. Ann. Stat. 10-4953 (Burns 1974 Supp.) provides:

> "It shall be unlawful for any person by the use of force or violence, or the threat of the use of force or violence to prevent or to attempt to prevent any person from engaging in any lawful employment or use of his property within this state.
>
> Any person violating any provision of this section shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than one hundred dollars [$100] nor more than five hundred dollars [$500], or by imprisonment for not more than one hundred and eighty [180] days, or by both.
>
> Each day of violation shall constitute a separate offense for the purposes of this section."

Because McGill's complaint failed to allege that the appropriate local authorities were unwilling or unable to furnish

adequate protection against the alleged criminal conduct of the Union's members, we hold that the trial court lacked jurisdiction from the outset to grant any injunctive relief. Our decision is consonant with the legislative policy underlying the Act's requirement that a complainant plead and prove the inability or unwillingness of the police to afford protection against unlawful conduct. This provision of section 7, IC 1971, 22-6-1-6(e), is derived from an identical provision of the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.* (1972), — the federal counterpart of Indiana's Anti-Injunction Act. The policies supporting this particular jurisdictional requirement were articulated in the *Report of the Senate Judiciary Committee* accompanying S.B. 935, the bill which later became the Norris-LaGuardia Act:

> "This is an entirely new provision, but it is believed to be a just one. These injunctions are issued upon an allegation, among other things that unless the order is issued complainant's property will be injured or destroyed. If the public officers whose duty is to protect complainant's property are able and willing to give the protection required by law, there is no reason why the courts of equity should take over the functions of the executive department and undertake to police their districts and no reason why the extraordinary and one-sided remedy of an injunction should be resorted to. It seems, therefore, but fair that before the injunction is issued, the court should find from the evidence that such officers have failed or are unable to furnish the protection required by law.

> Injunctions are often applied for and issued for the moral effect that such injunctions will have in disheartening and discouraging employees engaged in a strike, rather than because of any real necessity to protect property." S. REP. NO. 163, 72nd Cong., 1st Sess. 21 (1932).

The trial court's initial findings, which were filed prior to the issuance of the temporary restraining order, are wholly silent on the inability or unwillingness of the Valparaiso police to afford protection to McGill's plant. The trial court's failure to enter an affirmative finding on this issue, prior to the issuance of the temporary restraining order, constituted an additional jurisdictional defect

under sections 7 and 8 of the Act, IC 1971, 22-6-1-6 & 8 (Burns Code Ed.) ; *Peters* v. *Poor Sisters of St. Francis* (1971), 148 Ind. App. 453, 267 N.E.2d 558; *Teamster's Local No. 297* v. *Air-Flow Sheet Metal, Inc.* (1968), 143 Ind. App. 322, 240 N.E.2d 830. The Anti-Injunction Act mandates the trial court to affirmatively establish that the "standing injunction" of the criminal law is inadequate to afford the complainant with sufficient protection as a prerequisite to the granting of injunctive relief. The trial court's failure to enter such a finding, prior to its attempted equitable intervention, rendered its action void *ab initio* for want of subject-matter jurisdiction.

For the alternative reasons discussed in this opinion, this cause must be remanded and the trial court is further instructed to dismiss the complaint for lack of subject-matter jurisdiction.

Garrard, J., concurs; Hoffman, J., concurs with opinion.

CONCURRING OPINION

HOFFMAN, J.—I concur in result.

This appeal is from the court granting a temporary injunction. Any error that might have been committed in granting a temporary restraining order would be harmless as it relates to this appeal.

The temporary injunction superseded the temporary restraining order. The only reversible errors must have been committed in regard to the temporary injunction.

NOTE.—Reported at 328 N.E.2d 761.