UNITED STEELWORKERS OF AMERI-CA, AFL–CIO–CLC and its Local Unions No. 12775 and No. 13796, Appellants (Plaintiffs Below),

v.

NORTHERN INDIANA PUBLIC SER-VICE COMPANY, a corporation; Continental Assurance Company, a corporation; and Washington National Insurance Company, a corporation, Appellees (Defendants Below).

No. 3–181A16.

Court of Appeals of Indiana, Fourth District.

June 22, 1982.

Gregory S. Reising, Reising, Hirsh, Mindel, Schwartzman & Pannos, Gary, for appellants.

Eichhorn, Eichhorn & Link, Hammond, for appellee Northern Indiana Public Service Co.

Hawk P. C. Kautz, Merrillville, for appellee Continental Assur. Co.

YOUNG, Judge.

United Steelworkers of America, AFL–CIO--CLC and its Local Unions No. 12775 and No. 13796 appeal the trial court's dismissal of its complaint for an injunction and damages against Northern Indiana Public Service Company, Continental Assurance Company and Washington National Insurance Company.[1]  We affirm.

NIPSCO filed a motion to dismiss Steelworker's complaint arguing failure to state a claim and lack of subject matter jurisdiction.  Ind. Rules of Procedure, Trial Rule 12(B).  The trial court entered the following findings and judgment:

1.  Plaintiffs allege and the Court finds that they are voluntary associations and Local Unions of the United Steelworkers of America representing employees of the Defendant Northern Indiana Public Service Company.

2.  Plaintiffs allege and the Court finds that the Defendant NIPSCO is an Indiana corporation engaged in the business of providing electric power to the public.

3.  Plaintiffs allege and the Court finds that the Defendant Continental Assurance Company is an insurance company licensed to do business in the State of Indiana.

4.  Plaintiffs allege and the Court finds that for many years the Plaintiffs and NIPSCO have been parties to collective bargaining agreements establishing the terms and conditions of employment for employees of the Defendant NIPSCO and

---

1.  Steelworkers make no allegations of error concerning an action taken against Continental or Washington.  This opinion does not there-fore affect Continental or Washington except insofar as they might necessarily be involved in NIPSCO's affairs.

that as part of said agreements NIPSCO agreed to establish a group accident and health insurance program and did procure a policy of insurance with Defendant Continental Assurance Company, a copy of which policy is attached to Plaintiffs' Complaint as Exhibit C.

5. Plaintiffs allege and the Court finds that under the terms of the collective bargaining agreements between the parties the Defendant NIPSCO paid 85% of the cost of the accident and health insurance and the employees paid 15%.

6. Plaintiffs allege and the Court finds that over the years since NIPSCO contracted with Continental, the premiums paid by NIPSCO and the employees have exceeded the cost of said insurance and that a contingency reserve was created and that by agreement of the parties the money in the contingency reserve was to be used for the benefit of the employees covered by the policy by either reducing futher [sic] premiums or increasing future benefits as NIPSCO and Plaintiffs might agree.

7. The Court finds from the allegations of the Complaint that the Plaintiffs and Defendant NIPSCO have not agreed as to the disposition of the contingency reserve.

8. Plaintiffs allege and the Court finds that the contingency reserve contained approximately Seven Hundred Thousand Dollars ($700,000.00) as of June 1, 1980.

9. Plaintiffs allege and the Court finds that on May 31, 1980, the collective bargaining agreements between NIPSCO and the Plaintiffs expired and the employees represented by the Plaintiffs were on strike in furtherance of their demands for improvements in their collective bargaining agreements.

10. The Court finds that a labor dispute as contemplated by Indiana Code 22-6-1-1 et seq., exists between the Plaintiff Unions and the Defendant Northern Indiana Public Service Company.

11. During oral argument Plaintiffs' counsel asserted Indiana Code 22-6-1-4 to be unconstitutional. The Court finds I.C. 22-6-1-4 to be constitutional and to be applicable to the facts in this case.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED:

1. The law is with the Defendants.

2. The Motion of Defendant Northern Indiana Public Service Company to Dismiss Plaintiffs' Complaint is granted and Counts I and III of Plaintiffs' Complaint are ordered dismissed.

3. The Motion for Judgment on the Pleadings of the Defendant Continental Assurance Company is granted.

4. The Court is without jurisdiction to enter the injunctive relief requested by Plaintiffs by reason of the provision of Indiana Code 22-6-1-4 restricting the Court's equity power in labor disputes.

5. Plaintiffs' Complaint fails to state of [sic] cause of action upon which relief can be granted by reason of the allegations of the Complaint "by agreement of all the parties, the money in the Contingency Reserve was to be used for the benefit of the employees covered by Policy No. L. 68048 by either reducing future premiums or increasing future benefits, as NIPSCO and plaintiffs might agree." The allegations of the Complaint further establish that the Plaintiffs and Defendant NIPSCO have not agreed to the disposition of the contingency reserve. The Court cannot coerce an agreement from the parties, nor can it restrain and enjoin the Defendant NIPSCO from interfering with the disposition of the contingency reserve in any manner other than as directed by Plaintiffs, nor can the Court restrain ane [sic] enjoin Defendant Continental from refusing to comply with the demand of plaintiffs to pay all premiums that have come due or may come due as prayed for in Plaintiffs' Complaint; to do so would force the parties into an agreement that they did not freely enter as disclosed by the pleadings.

6. Count III fails to state facts upon which damages can be awarded or upon which the Court could order Defendant NIPSCO to create a fund of Five Million Dollars ($5,000,000.00) for the purpose of paying insurance claims.

7. The Court finds from the allegations of the Complaint that the Plaintiffs and Defendant NIPSCO have not agreed as to the disposition of the contingency reserve.

■ Count I of Steelworker's complaint was dismissed for lack of subject matter jurisdiction. The trial court held that it was without subject matter jurisdiction to enter injunctive relief because of the prohibitions in Ind.Code 22–6–1–4. Ind. Code 22–6–1–4 is a section of Indiana's Anti-Injunction Act. Ind.Code 22–6–1–1 (also referred to as a "little" or "State" Norris-LaGuardia Act, 29 U.S.C. § 101).[2] The primary focus of the Act is to minimize judicial control over conduct related to labor disputes.[3] *International Association of Machinists and Aerospace Workers, Local No. 1227 v. McGill Manufacturing Co.,*

(1975) 164 Ind.App. 321, 328 N.E.2d 761, 764. The policy of the State is set forth in the Act as an aid to its interpretation. Ind. Code 22–6–1–2 provides:

In the interpretation of this act and in determining the jurisdiction and authority of the courts of the state, as such jurisdiction and authority are herein defined and limited, the public policy of the state is hereby declared as follows:

Whereas, under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership associations, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable

**2.** The federal Norris-LaGuardia Act, 29 U.S.C. §§ 101 to 113 is virtually identical to Indiana's Anti-Injunction Act. The purpose and public policy of the federal act 29 U.S.C. § 102 is the same as Indiana's purpose and policy. Ind. Code 22–6–1–2. Therefore, the interpretation of the federal act by federal courts, while not binding upon us, is a valuable aid to construction.

Because of the similarity of the two statutes and the extensive legislative history available to help construe the language of the federal act, we feel the federal cases construing the Norris LaGuardia Act to be very significant in our interpretation of the Indiana Act. *Indiana Civil Rights Commission v. Sutherland Lumber,* (1979) Ind.App., 394 N.E.2d 949.

**3.** The issuance of an injunction in a labor dispute is prohibited except in conformity with the Act. Ind.Code 22–6–1–1. The prohibition is predicated upon the case involving or growing out of a labor dispute which is defined broadly by the statute. Ind.Code 22–6–1–12 provides:

When used in this act, and for the purpose of this act:

(a) A case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or association of employers and one or more employees or association of employees; (2) between one or more employers or association of employers and one or more employer or association of employers; or (3)

between one or more employees or association of employees and one or more employees or association of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

. . . . .

(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

If the case involves or grows out of a labor dispute, Ind.Code 22–6–1–4(c) prohibits any court from issuing any type injunctive relief ordering any person involved to pay or withhold any money. Ind.Code 22–6–1–4(c) provides:

No court of the state of Indiana shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

. . . . .

(c) Paying or giving to, or withholding from any person participating or interested in such labor dispute, or any strike or unemployment benefits or insurance, or other moneys or things of value; . . . .

terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definition of, and limitations upon, the jurisdiction and authority of the courts of the state of Indiana are hereby enacted.

The purpose of the Act is to protect employees and unions. We find nothing to indicate an intent to deny jurisdiction to issue injunctions against employers.[4] *Brotherhood of Locomotive Engineers v. Baltimore & Ohio Railroad Co.*, (7th Cir. 1962) 310 F.2d 513.

The enactment of the Act was, of course, the responsibility of Congress, and not that of this court. That Congress may have been intent upon shielding organizations of employees from injunctions rather than employers was and is a matter within its province. The same can be said of the exemption of labor organizations from the sanctions of anti-trust laws. Those are matters over which the courts have no control, in the absence of a constitutional attack.

The language used clearly negatives any intention to recognize any general reciprocity of rights of capital and labor. Essentially the Act is frankly a charter of the rights of labor against capital.

*Id.* at 518. (Notes omitted.) Thus, the Anti-Injunction Act does not deny the courts of this State the jurisdiction to issue injunctions against employers. *Brotherhood of Locomotive Engineers v. Baltimore & Ohio Railroad Co., supra.*

Because we hold the Anti-Injunction Act does not preclude the issuance of an injunction against employers in this case, we need not resolve appellants' allegations that this litigation did not involve or grow out of a labor dispute under Ind.Code 22–6–1–4.

■ Before discussing Steelworker's T.R. 12(B)(6) allegations, we must determine whether the trial court had the power to even find the complaint failed to state a claim. The trial court dismissed Count I because it did not have subject matter jurisdiction to issue an injunction as well as failure to state a claim. Appellant correctly states that once a trial court determines that it has no subject matter jurisdiction, it is powerless to determine the complaint fails to state a claim. *Cooper v. County Board of Review*, (1971) 150 Ind.App. 232, 276 N.E.2d 533. As determined above, the trial court erroneously determined that Ind. Code 22–6–1–4 precluded issuance of an injunction. The court did have subject matter jurisdiction. The trial court did dismiss both Counts I and III for failure to state a claim. T.R. 12(B)(6). Appellants contend this was error.

■ To state a claim for relief, T.R. 8(A)(1) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Steelworkers admit their complaint did not set forth all of the elements of a theory of liability. Nor were they required to do so. Steelworkers contend it is only necessary that it did not appear from the complaint itself that [they] were not precluded from recovery." Stated differently, a 12(B)(6) Motion to Dismiss can be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted. *State v. Rankin*, (1973) 260 Ind. 228, 294 N.E.2d 604; *Lamberson v. Crouse*, (1982) Ind.App., 436 N.E. 2d 104.

---

**4.** There are two exceptions which are not pertinent to our decision. Ind.Code 22–6–1–3(a) and (b) and Ind.Code 22–6–1–4(b).

Steelworkers present two theories upon which relief could be granted,[5] breach of contract and constructive trust. From the face of the complaint it is clear that no relief under either of these theories could be granted.

■ Steelworkers allege that "[b]y agreement of all the parties, the money in the Contingency Reserve was to be used for the benefit of the employees covered by Policy No. L68048 by either reducing future premiums or increasing future benefits, as NIPSCO and plaintiffs might agree." Then they allege that "plaintiffs demanded of NIPSCO that it agree to make available the money in Continental's Contingency Reserve to pay the premiums of the employees . . . ." On the face of the complaint, Steelworkers demonstrate that no agreement had been reached as to the specific use to which the reserve fund was to be put. The trial court could not enforce a contract or even find a breach of a contract because no contract then existed. They merely agreed to agree to reduce future premiums or increase future benefits. To use the fund as demanded does not amount to either.

■ We might also note that even though the courts are not precluded from enjoining employers under Ind.Code 22–6–1–1 during a labor dispute, the public policy of avoiding intervention in collective bargaining and labor matters is one which may legitimately be considered. Where no agreement has been reached, the courts may not intervene to make an agreement the parties have not made. This is especially appropriate in labor matters.

■ Relief on the theory that a constructive trust had been created is also precluded by the complaint. In *Hunter v. Hunter*, (1972) 152 Ind.App. 365, 283 N.E.2d 775, Judge Buchanan summarizes the fundamental principles of constructive trusts relevant to our case:

A constructive trust is a fiction of equity, devised for the purpose of making

equitable remedies available against one who through fraud or other wrongful means acquires the property of another. Trusts are thus constructed by the court irrespective of the intent of the parties, in defiance of the statute of frauds to uphold justice and avoid unjust enrichment. The underlying principle is that the statute of frauds may not be invoked to aid in the perpetration of a fraud.

Indiana courts have limited the imposition of a constructive trust to instances where there is actual fraud or there exists a breach of a duty arising out of a confidential or fiduciary relationship which necessitates the presumption that fraud be inferred. The breach of duty necessary to create a constructive trust was described by the court [as] . . . :

"'a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.'"

If the confidential relationship is found to exist, then fraud can be presumed or inferred due to a violation or breach of the fiduciary relationship. One occupying a confidential or fiduciary relationship of trust with another is bound to abstain from placing himself in an inconsistent position tending to interfere with the execution of his duties.

Although the existence of a confidential relationship depends upon the facts of each case, it can be generally stated that a confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other. Not only must there be confidence by one party in the other, the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of

---

**5.** Counts I and III request essentially the same relief only in different forms. They both seek payment of insurance benefit premiums by use

of an existing fund, creation of a new fund, or payment of damages for failure to do so.

knowledge. Furthermore, it must be shown that the dominant party wrongfully abused this confidence by improperly influencing the weaker so as to obtain an unconscionable advantage.

(Note and citations omitted.) No fraud has been alleged, nor is there an allegation of a breach of duty arising out of a confidential relationship which necessitates a presumption of fraud. The relative positions of the parties in the collective bargaining process precludes a finding that a duty had been breached (concerning the reserve fund) arising out of a confidential relationship. A finding that a confidential relationship existed is precluded by the complaint. NIPSCO has not gained a position of superiority by any reposing of confidence in it by Steelworkers. The process of collective bargaining in which they were involved is based upon equality of bargaining power with capital granted to labor by the legislature.

Appellant Steelworkers have not demonstrated that the trial court erred by dismissing their complaint. The dismissal is affirmed.

MILLER, P. J., and CONOVER, J., concur.