**McKendall POMPEY and Tractor Supply Company, Appellants–Petitioners,**

v.

**Vincent PRYNER, Appellee–Respondent,**

and

**Chauffeurs, Teamsters, Warehousemen and Helpers, Local 135, Intervenors.**

No. 49A02–9511–CV–656.

Court of Appeals of Indiana.

June 20, 1996.

Michael A. Moffatt, Blake J. Burgan, Barnes & Thornburg, Indianapolis, for appellants.

William R. Groth, Fred O. Towe, Fillenwarth Dennerline Groth & Towe, Indianapolis, for appellees/intervenors, Chauffeurs, Teamsters, Warehousemen and Helpers, Local 135.

Bobby A. Potters, Indianapolis, for appellee Vincent L. Pryner.

## OPINION

FRIEDLANDER, Judge

McKendall Pompey and Tractor Supply Company (hereinafter collectively referred to

as the appellants) appeal the trial court's determination that it lacked jurisdiction to grant a petition for emergency and permanent protective orders which appellants filed against Vincent L. Pryner. The appellants present several issues for review, which we consolidate and restate as:

Did the trial court err in concluding that chapter 6, section 4 of the Indiana Anti–Injunction Act[1] deprived it of jurisdiction to issue restraining orders or temporary or permanent injunctions in the instant case?

We reverse.

The relevant facts are that Tractor Supply Company (the Company) is a national retail chain selling farm products and one of its distribution centers is located in Indianapolis, Indiana. Pryner was an employee at the distribution center and Pompey was his immediate supervisor. On June 28, 1994, Pryner took a leave of absence from employment for stress-related reasons. Thereafter, Pryner was fired for violating certain provisions of the collective bargaining agreement then in force pertaining to leaves of absence.[2] Pryner filed a grievance and the matter was heard by an arbitrator. On August 11, 1995, the arbitrator ruled that the Company did not have just cause to terminate Pryner's employment and ordered that Pryner's employment be reinstated. The arbitrator further ordered the Company "to pay [Pryner] backpay [sic] from September 20, 1994, to the date of this award, and minus sixty days backpay [sic] for grievant's contribution to this situation." *Record* at 134. The arbitrator retained jurisdiction "to resolve any disputes over the remedy or payment of the arbitrator's fee." *Id.*

On August 18, 1995, the Company sent the following letter to Pryner:

Based upon recent information we have learned, including written and oral statements that you have made, it has been determined that reinstatement is impracti-

cable at this time. Accordingly, the decision has been made to suspend your employment, effective immediately, pending further investigation and review. As part of this process, as soon as it is practicable we will schedule you for an examination by a company chosen health care professional at our expense. You will be notified next week of the day and time of your scheduled appointment.

Rather than returning you to work on Monday (as you have indicated you are willing to do under Arbitrator Stanley's decision) only to suspend you, we will compensate you for reinstatement for that one day and we will also compensate you during the pendency of our investigation of the foregoing matters. Your pay, less appropriate withholdings, will be mailed to you on the normal pay periods.

*Id.* at 11. The Company suspended Pryner's employment because of threats Pryner allegedly had made against the Company and Pompey which he had expressed during depositions and to his psychologist. On August 22, 1995, the Company filed a Joint Verified Petition for Emergency and Permanent Protective Orders, seeking to restrain Pryner from abusing and harassing Pompey and the Company and from coming within five hundred feet of the Company or Pompey. The petition was granted and the matter was set for hearing on September, 22, 1995.

On September 14, 1995, Pryner filed a Verified Petition to Strike and Vacate Joint Verified Petition for Emergency and Permanent Protective Order. On September 18, 1995, the trial court conducted a hearing on the motions and issued the following relevant findings of fact and conclusions of law:

3. The Court finds that this Court does not have jurisdiction to order restraining orders or temporary or permanent injunctions in any case involving or growing out

---

1. Ind.Code Ann. § 22–6–1–1 *et seq.* (West 1991).

2. Article 7, section 8 of the collective bargaining agreement provided that the following constitute violations by an employee while on a leave of absence:

e. If the associate overstays a leave of absence[.]

f. If the associate gives a false reason for a leave of absence, or engages in other employment during such leave. . . .

\* \* \* \* \* \*

j. Failure to report for a period of three (3) days.
*Record* at 132.

of a labor dispute pursuant to the Indiana Anti–Injunction Act, I.C. 22–6–1–4.

4. The Court vacates its temporary restraining order against the Respondent and dismisses this cause of action as to making the protective order permanent.

5. The Court finds that the more appropriate forum for this issue would be Federal Court, or before the arbitrator, Cynthia Stanley, who retained jurisdiction to resolve any disputes over the remedy ordered in her holding dated August 11, 1995.

*Record* at 165.

█ The trial court's conclusion that it did not have subject matter jurisdiction to grant injunctive relief in the instant action was based upon its interpretation of section 4 of the Indiana Anti–Injunction Act (the Act), which states:

Sec. 4. No court of the state of Indiana shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are defined in this chapter) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment.

(b) Becoming or remaining a member of any labor organization, regardless of any such undertaking or promise as is described in section 3 of this chapter.

(c) Paying or giving to, or withholding from any person participating or interested in such labor dispute, or any strike or unemployment benefits or insurance, or other moneys or things of value.

(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the state of Indiana.

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence.

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute.

(g) Advising or notifying any person of an intention to do any of the acts specified in this section.

(h) Agreeing with other persons to do or not to do any of the acts specified in this section.

(I) Advising, urging, or otherwise causing or inducing without fraud or violence the acts specified in this section, regardless of any such undertaking or promise as is described in section 3 of this chapter.

IC § 22–6–1–4. When considering a question of statutory construction, the appellate court is not bound by the trial court's interpretation. *Meier v. American Maize–Products, Inc.,* 645 N.E.2d 662 (Ind.Ct.App.1995), *clarified in part on reh'g,* 650 N.E.2d 741, *trans. denied.* Rather, we will independently determine the statute's meaning and apply it to the facts of the case. *Miller v. Bryant,* 644 N.E.2d 188 (Ind.Ct.App.1994), *trans. denied.*

█ When a trial court is asked to grant equitable relief in an action brought within the context of a labor dispute, the trial court must first determine whether the Act divests the court of jurisdiction to grant the remedy sought. *Anderson v. Wolford,* 604 N.E.2d 659 (Ind.Ct.App.1992), *trans. denied.* In the instant case, the trial court determined that it was without jurisdiction because I.C. § 22–6–1–4 divests state courts of jurisdiction in cases "involving or growing out of a labor dispute." We must first determine whether the relief sought by the appellants involved or grew out of a labor dispute within the meaning of the Act.

The Act defines "labor dispute" as follows:

(a) The term "labor dispute" includes any controversy concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or

not the disputants stand in the proximate relation of employer and employee.

I.C. § 22–6–1–12. The instant case involves a request by an employer to enjoin an employee from coming onto company property and from coming near the employee's supervisor because of threats of violence allegedly made by the employee. Those threats stemmed from alleged incidents of racial harassment directed against the employee by company personnel, including the aforementioned supervisor. The employee claimed to have suffered emotional distress as a result of the harassment to such an extent that he took a leave of absence. The company attempted to terminate his employment for noncompliance with provisions of the relevant collective bargaining agreement governing leaves of absence. An arbitrator subsequently ruled that the termination was improper and reinstated the employment. We conclude that the relief sought by the appellants grew out of a labor dispute within the meaning of the Act because prohibiting an employee from entering his place of employment, hence prohibiting him from working, concerns a condition of his employment.

■ The fact that the instant controversy grew out of a labor dispute, thus invoking the provisions of the Act, does not necessarily indicate that the trial court was without jurisdiction to grant injunctive relief. Our courts have recognized that an injunction is proper in disputes between employees and employers, notwithstanding the Act, when the act to be enjoined serves an illegal objective or purpose, *see Fair Share Org., Inc. v. Mitnick,* 134 Ind.App. 675, 188 N.E.2d 840 (1963), *trans. denied,* and when the injunction is consistent with sound public policy.[3] *See Murrin v. Cook Bros. Dairy, Inc.,* 127

Ind.App. 23, 138 N.E.2d 907 (1956). The Act sets forth a list of certain labor-related acts which a state court is without jurisdiction to enjoin, *see* I.C. § 22–6–1–4, but also specifies certain instances in which a state court is vested with jurisdiction to grant injunctive relief in a labor dispute, one of which is relevant in the instant case.

I.C. § 22–6–1–6 states:

> Sec. 6. (a) No court of the state of Indiana shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect:
>
> > (1) *that unlawful acts have been threatened and will be committed unless restrained* or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof [.]

[Emphasis supplied.] The appellants alleged in their Joint Verified Petition for Emergency and Permanent Protective Orders that Pryner had "threatened physical violence against Pompey and other employees and representatives of [the Company]." *Record* at 4. It is beyond debate that violence directed against fellow workers constitutes

---

3. "Public policy" is defined in the Act as follows:

Whereas, under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership associations, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization,

and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor or their agents in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definition of and limitations upon the jurisdiction and authority of the courts of the state of Indiana are hereby enacted.

IC § 22–6–1–2.

"unlawful acts" within the meaning of I.C. § 22–6–1–6. Therefore, we conclude that the trial court erred in determining that the Anti–Injunction Act divested it of jurisdiction to enjoin an employee from going onto the premises of his employer because of threats of violence made by the employee.

■ Although it was within the trial court's jurisdiction to issue injunctive relief based upon the allegations underlying the appellants' petition, it does not necessarily follow that it should have been granted. If a court determines that it has jurisdiction to grant injunctive relief in a matter involving a labor dispute, it must strictly adhere to the procedures set out in the Act. I.C. § 22–6–1–1.[4] The Act was intended to minimize judicial control of labor-related disputes. *International Alliance Theatrical Stage Employees v. Sunshine Promotions, Inc.,* 555 N.E.2d 1309 (Ind.Ct.App.1990). The Act transforms a request for injunctive relief involving parties to a labor dispute into a special statutory proceeding and "establishes a complex set of procedural requirements which strictly circumscribe the equity jurisdiction of trial courts." *Id.* at 1311. The procedural requirements to which the trial court must adhere are set out in I.C. § 22–6–1–6. According to section 6, the petition for relief must be supported by a complaint alleging: (1) the commission or threat to commit unlawful acts; (2) substantial and irreparable injury to the complainant's property; (3) denial of relief will inflict more harm on the complainant than a grant of relief will inflict upon defendant; (4) complainant has no adequate remedy at law; and (5) the public officer responsible for protecting complainant's property is unable or unwilling to furnish adequate protection. Section 6 also sets out other procedural requirements relating to the hearing which must be conducted prior to ruling upon the petition.

A review of the appellants' joint petition for injunctive relief reveals that it did not conform with the requirements of IC § 22–6–1–6 because it failed to allege items (3)–(5) set out above. Moreover, no hearing on the motion for injunctive relief was held in conformity with the requirements of section 6. We note, however, that noncompliance with respect to the hearing is chargeable at least in part to the trial court's determination that it did not have jurisdiction to grant the appellants' petition[5] in any event. Be that as it may, the appellants' action for injunctive relief was not in compliance with the requirements of the Anti–Injunction Act.

■ Pursuant to IC § 22–6–1–6, "a plaintiff seeking injunctive relief must affirmatively invoke the court's jurisdiction by a verified complaint which alleges all of the factual assertions enumerated by the statute." *International Ass'n of Machinists and Aerospace Workers, Local No. 1227 v. McGill Mfg. Co., Inc.,* 164 Ind.App. 321, 328 N.E.2d 761 (1975). The requirements set out in the Act constitute an exception to the liberal notice pleading standard of Rule 8(A) of the Indiana Rules of Trial Procedure. *Id.* When a plaintiff fails to comply with the procedural requirements of the Act, a trial court lacks subject matter jurisdiction from the outset to grant injunctive relief. When such occurs, the proper remedy is dismissal of the action for lack of subject matter jurisdiction. *Id.* Inasmuch as the dismissal is for failure to comply with procedural requirements and is not a determination on the merits, we further conclude that the dismissal should be without prejudice. *Cf. Stocker v. Cataldi,* 521 N.E.2d 716, 718 (Ind.Ct.App. 1988) ("it is clear that a dismissal for lack of jurisdiction is without prejudice"); *Cha v. Warnick,* 455 N.E.2d 1165 (Ind.Ct.App.1983) (failure of plaintiff to include opinion of a medical review panel, a jurisdictional prerequisite under the Medical Malpractice Act,

4. I.C. § 22–6–1–1 states:
   No court of the state of Indiana, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or tempo-

rary or permanent injunction be issued contrary to the public policy declared in this chapter.

5. For instance, neither Pryner nor the record contradict the appellants' assertion that they were denied the opportunity to present evidence in support of their petition.

resulted in a dismissal without prejudice). We therefore remand this cause to the trial court with instructions to dismiss the appellants' petition for injunctive relief without prejudice.

Judgment reversed and remanded with instructions.

KIRSCH and CHEZEM, JJ., concur.