Jerry Lynn "Lenny" NORDMAN,
Appellant–Defendant,

v.

NORTH MANCHESTER FOUNDRY,
INC., and Ezra Gahl, an Employee,
Appellees–Plaintiffs.

No. 85A05–0307–CV–367.

Court of Appeals of Indiana.

June 28, 2004.

Joseph E. Allman, Macey Swanson and Allman, Indianapolis, IN, Attorney for Appellant.

Joel K. Stein, Tiede Metz & Downs, P.C., Wabash, IN, Attorney for Appellees.

## OPINION

MAY, Judge.

Jerry Lynn Nordman appeals the trial court's order granting his employer's Petition for a Temporary Restraining Order and Injunction Prohibiting Violence or Threats of Violence. North Manchester Foundry (hereinafter "the Foundry") claimed Nordman made a credible threat of violence against its employee Ezra Gahl. Nordman raises five issues, but we find the dispositive issue is whether his acts arose out of a labor dispute and thus the trial court lacked subject matter jurisdiction under Indiana's Anti–Injunction Act.

Reversed and remanded with instructions.

### FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment follow. On June 1, 2003, Local 626 of the United Steelworkers of America, AFL–CIO went on strike and began to picket at the Foundry. Nordman was one of the striking union members. Ezra Gahl is an employee of the Foundry who continued to work during the strike and the nephew of David Boyd, one of the owners of the Foundry.

That day, while Nordman was picketing, Nordman asked Gahl to "come out and strike with them" (Tr. at 12). Gahl refused. Nordman then called Gahl "some names" and later that day, Nordman made a motion to Gahl "like he was going to break [him] in half." (*Id.*) Later that evening, when Nordman was not picketing, he again called Gahl names. He told Gahl that he was "going down" and that it might not happen during the strike but Nordman guaranteed that Gahl would be "going

down." (*Id.*) In response, Gahl told Nordman that if he came to his house, Gahl would "[have] something for him." (*Id.* at 18.)

On June 19, 2003, the Foundry filed its verified petition for a temporary restraining order and complaint for injunction in the Wabash Superior Court, asking the court to find an emergency existed and to issue a restraining order prohibiting Nordman from further harassment of Gahl. On the same day the court issued, *ex parte*, an Order to Show Cause and a Temporary Restraining Order ("TRO") against Nordman. The TRO, among other things, restrained Nordman from making threats of violence against Gahl and set a hearing on the matter for June 27, 2003.

At that hearing, both parties presented evidence and cross-examined witnesses. Thereafter, the court entered an injunction based on the Workplace Violence Restraining Order statute[1] prohibiting Nordman from battering, stalking, following, or contacting Gahl. The injunction required Nordman to stay at least 100 yards away from Gahl's residence and to pay the Foundry's attorney fees of $2,250.00. Nordman appeals.

## DISCUSSION AND DECISION[2]

The trial court proceeded under the Workplace Violence Restraining Order statute in granting the injunction against Nordman. However, Nordman maintains, because of Indiana's Anti–Injunction Act, Ind.Code § 22–6–1–1 *et seq.*, the trial court did not have jurisdiction to issue an injunction because this is a case "involving or growing out of a labor dispute." (Appel-

lant's Br. at 14.) We agree with Nordman. The trial court erred by applying the Workplace Violence Restraining Order statutes, rather than Indiana's Anti–Injunction Act, because this threatened violence grew out of a labor dispute.

Ind.Code § 34–26–6–6 provides for the issuance of a TRO or an injunction to an employer on behalf of an employee to prohibit further violence or threats of violence by a person if:

(1) the employee has suffered unlawful violence or a credible threat of violence from the person; and

(2) the unlawful violence has been carried out at the employee's place of work or the credible threat of violence can reasonably be construed to be carried out at the employee's place of work by the person.

Nordman argues the trial court erred in applying the Workplace Violence Restraining Order statute because his acts grew out of a labor dispute and therefore the Indiana Anti–Injunction Act ("AIA") controls whether an injunction may be ordered. The AIA sets forth certain labor-related acts a state court is without jurisdiction to enjoin, *see* Ind.Code § 22–6–1–4, but also specifies certain instances in which a state court has jurisdiction to grant injunctive relief in a labor dispute. For example, Ind.Code § 22–6–1–6 states generally that no court of the state of Indiana shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, except after findings of fact by the court, to the effect:

---

1. Ind.Code § 34–26–6–6.

2. We note initially Nordman's assertion the trial court erred because it granted a temporary restraining order against him without the Foundry giving him proper notice. However, Nordman's argument fails because the trial court entered a permanent injunction, which is a final judgment, thereby making his argument moot. *See Barton v. Fuller*, 249 Ind. 100, 231 N.E.2d 35 (1967) (where a temporary order appealed had been dissolved by issuance of a permanent writ, our supreme court dismissed the appeal for mootness).

(1) *that unlawful acts have been threatened and will be committed unless restrained* or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof[.]

(Emphasis supplied.)

■ As this case involves threatened workplace violence, both the Workplace Violence Restraining Order statute and the AIA could potentially apply. The Workplace Violence Restraining Order statute applies to any credible threat of violence in the workplace. The AIA applies specifically to threats of violence occurring during a labor dispute. When two conflicting statutory provisions appear controlling, the statute dealing with a subject in a specific manner controls over the statute dealing with the same subject in general terms. *Turner v. Bd. of Aviation Comm'rs*, 743 N.E.2d 1153, 1160 (Ind.Ct.App.2001). The AIA is the more specific statutory provision. Therefore, if it applies, the AIA is the controlling statute. Accordingly, we address whether the AIA applies.

■ When equitable relief is sought in the context of a controversy involving labor relations, the trial court must initially inquire as to whether the AIA has withdrawn the court's jurisdiction to grant the desired remedy. *Int'l. Ass'n. of M. & A.W. v. McGill Mfg. Co.*, 164 Ind.App. 321, 325, 328 N.E.2d 761, 764 (1975), *reh'g denied.* Therefore, we must determine whether the relief sought by the Foundry involved or grew out of a labor dispute within the meaning of the AIA.

Ind.Code 22–6–1–12 provides:

When used in this act, and for the purpose of this act:

(a) A case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; ... or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

\* \* \* \* \*

(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

In *Pompey v. Pryner*, 668 N.E.2d 1243 (Ind.Ct.App.1996), an employer sought to restrain an employee from harassing both the supervisor and company and from coming within 500 feet of the company or supervisor because of threats of violence made by the employee. The employee suffered emotional distress as a result of the harassment to such an extent that he took a leave of absence. The company attempted to terminate his employment for noncompliance with provisions of the relevant collective bargaining agreement governing leaves of absence. An arbitrator subsequently ruled the termination was improper and reinstated the employment. We concluded the relief sought grew out of a labor dispute within the meaning of the

AIA because prohibiting an employee from entering his place of employment, hence prohibiting him from working, concerns a condition of his employment. *Id.* at 1247.

■ The present case concerns a request by an employer to enjoin an employee from making violent threats against another employee. Those threats stemmed from the fact that Gahl, the threatened employee, would not join other striking employees. Gahl claimed to have suffered emotional distress as a result of the harassment by Nordman. Specifically, the Foundry alleged in its Petition for Temporary Restraining Order and Injunction that Nordman "[had] made a credible threat of violence against [Gahl] by making knowing or willful statements or a course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family." (Appellant's App. at Tab B.)[3]

Violence directed against fellow workers constitutes an "unlawful act" within the meaning of Ind.Code § 22–6–1–6. *See Pompey*, 668 N.E.2d at 1247. While the incident cannot be characterized as concerning the terms or conditions of employment as the Foundry asserts, it did arise out of a labor dispute. Thus, we conclude the controversy raised by the Foundry grew out of a labor dispute within the meaning of the AIA and the trial court erred by applying the Workplace Violence Restraining Order statute.

Next we must address whether the trial court's application of the Workplace Violence Restraining Order statute was harmless error. If a court determines it has jurisdiction to grant injunctive relief in a matter involving a labor dispute, it must strictly adhere to the procedures set out in the AIA. Ind.Code § 22–6–1–1.[4]

■ The AIA was intended to minimize judicial control of labor-related disputes. *Pompey*, 668 N.E.2d at 1248. The AIA transforms a request for injunctive relief involving parties in a labor dispute into a special statutory proceeding and "establishes a complex set of procedural requirements which strictly circumscribe the equity jurisdiction of trial courts." *Id.*

■ The procedural requirements to which the trial court must adhere are set out in Ind.Code § 22–6–1–6. According to that section, no Indiana court has jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect:

(1) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association or organization making the threat or committing the unlawful act or actually au-

---

3. We remind Nordman that Appellate Rule 51(C) states: "All pages of the Appendix shall be *numbered at the bottom* consecutively[.]" (Emphasis supplied.) Nordman did not number the pages of his appendix, but instead indexed each item included in his appendix with alphabetized tabs.

4. Ind.Code § 22–6–1–1 states:

No court of the state of Indiana, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

thorizing or ratifying the same after actual knowledge thereof;

(2) That substantial and irreparable injury to complainant's property will follow;

(3) That as to each item of relief granted injury [5] will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

(4) That complainant has no adequate remedy at law; and

(5) That the public officer charged with the duty to protect complainant's property is unable or unwilling to furnish adequate protection. Such hearings shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officers of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property[.]

The statute requires the court to weigh evidence presented at a hearing and to make specific findings evidencing the court's consideration of all the critical elements listed in the statute. *Int'l Alliance Theatrical Stage Employees v. Sunshine Promotions, Inc.,* 555 N.E.2d 1309, 1312 (Ind.Ct.App.1990).

■ "[A] plaintiff seeking injunctive relief must affirmatively invoke the court's jurisdiction by a verified complaint which alleges all of the factual assertions enumerated by the statute." *Pompey,* 668 N.E.2d at 1248; *Cf. Local Union No. 115 v. Indiana Glass Co.,* 771 N.E.2d 1193 (Ind.Ct.App.2002) (where the allegations of Indiana Glass' complaint satisfied all five of the pleading requirements of section 6 of the AIA, the trial court's entry of injunctive relief was valid).

■ The requirements set out in the AIA constitute an exception to the liberal notice pleading standard of Trial Rule 8(A). *Pompey,* 668 N.E.2d at 1248. When a plaintiff fails to comply with the procedural requirements of the AIA, a trial court lacks subject matter jurisdiction from the outset to grant injunctive relief. When such occurs, the proper remedy is dismissal of the action for lack of subject matter jurisdiction. *Id.* The Foundry's petition for injunctive relief did not conform with the requirements of Section 6 because it failed to allege item (5) set out above.[6]

Accordingly, we reverse and remand for the court to dismiss the Foundry's petition without prejudice. *See Pompey,* 668 N.E.2d at 1248 ("inasmuch as the dismissal is for failure to comply with procedural requirements and is not a determination on the merits, we further conclude that the dismissal should be without prejudice").

Reversed and remanded with instructions.[7]

BAKER, J., and NAJAM, J., concur.

---

**5.** As in original text. It is apparent from the context that the sentence should read "more" or "greater" injury.

**6.** Nordman's only contention is that the petition for injunctive relief is void because "a showing that the police department is unable or unwilling to act on complaints of unlawful conduct is required to seek the court's injunctive assistance" and the Foundry made no such showing. (Appellant's Br. at 20.) We agree with Nordman that the Foundry failed

to allege item (5) of Ind.Code 22–6–1–6(a); it appears the Foundry failed to allege items (2)-(4) as well. Nordman does not argue this in his brief. Accordingly, those arguments are waived. Because the Foundry failed to allege item (5) in its petition for injunctive relief, it did not fulfill all of the specific pleading requirements of the Anti–Injunction Act, and its petition is therefore insufficient.

**7.** Because we reverse on procedural grounds, we need not address Nordman's arguments

regarding the validity of the injunction or the propriety of its breadth.