## FOR PUBLICATION



**FILED**

Jul 11 2014, 10:02 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**BRIAN J. PAUL**
**EMMANUEL V.R. BOULUKOS**
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.H., ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A05-1310-PO-525 |
| ) | |
| C.E.G., ) | |
| ) | |
| Appellee-Plaintiff, ) | |
| ) | |
| on behalf of ) | |
| ) | |
| G.S., ) | |
| ) | |
| Employee. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary L. Miller, Judge
Cause No. 49G21-1309-PO-34869

**July 11, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

C.E.G. employed A.H. and G.S.  C.E.G. petitioned for an injunction against A.H. on behalf of G.S. pursuant to the Workforce Violence Restraining Orders Act ("WVROA"), which the trial court granted.[1]  A.H. appeals, arguing that because this case involves or grows out of a labor dispute, it is governed by the Anti-Injunction Act ("AIA"), and therefore the trial court was without jurisdiction to issue the injunction pursuant to the WVROA.  We agree.[2]  Therefore, we reverse and remand with instructions to dismiss C.E.G.'s petition without prejudice.

**Facts and Procedural History**

In September 2013, A.H. was an employee of C.E.G.  A.H.'s supervisor was G.S.  On Friday, September 6, 2013, A.H. was injured at work.[3]  Later that day, G.S. tried to call A.H.  A.H. called G.S. back, and G.S. explained that he had called to see if A.H. wanted to work that Saturday.  A.H. said, "I'm not coming in at no four in the morning.  Now, I'll come in at six o' clock and work on something else, but I'm not coming in at no four in the morning because I'm not going to change my schedule for no one person."  Tr. at 37.  G.S. thought that A.H. was loud and disrespectful.  G.S. was in a drive-thru, and the cashier could hear A.H. yelling.  G.S. informed A.H. that he had found someone else to work, and they ended

---

[1] A.H. filed a verified request to prohibit public access to all filings in this appeal, which our motions panel granted.  Therefore, we have used initials for all parties to protect their privacy.

[2] Because of our resolution of this issue, we need not address A.H.'s challenges to the admission of certain evidence and the sufficiency of the evidence to support the injunction.

[3] The parties have not identified the nature of the injury.

2

the call. Later, A.H. called G.S. and said, "If I was being disrespectful, I apologize. You just don't know the whole story. They are doing this for one person and I'm not going to bow down to just one person." *Id.* at 38.

The following Monday, G.S. called A.H. into his office to discuss their Friday phone conversation. G.S. told A.H. that he was disrespectful. A.H. responded, "Disrespect? You call that disrespectful after all they done to us?" *Id.* G.S. told A.H. that he was going to document his behavior, but G.S. did not take any disciplinary action.

Later that day, A.H. called G.S. to tell him that he wanted to get a second opinion on the workplace injury he had incurred on Friday. G.S. said that was fine but told A.H. to go to C.E.G.'s clinic to ensure that A.H. would be covered by C.E.G.'s insurance.

On Tuesday morning, A.H. called G.S. and told him that he would not be working because he was going to see his personal doctor for a second opinion on his workplace injury. Later that day, A.H. called C.E.G.'s employee assistance program ("EAP") and spoke to a therapist ("the Therapist"). Afterward, the Therapist called C.E.G.'s director of human resources ("the Director") to report that A.H. was talking about blowing G.S.'s head off, that A.H. had hung up on her, and that she was concerned about what he might do next. *Id.* at 29, 31. Also that day, G.S. was informed that an EAP therapist had reported that A.H. was talking about blowing his head off. *Id.* at 42.

On September 12, 2013, the Director sent a letter ["the Letter"] to A.H. warning him to stay away from C.E.G. property "[i]n light of the threatening statements you made to [the Therapist] regarding blowing [G.S.'s] head off and obtaining a firearm." *Id.* at 25; Pet. Ex. 3.

At some point, the Director tried to phone A.H. to confirm that he had received the Letter. A.H. returned his call and left a voicemail message to the effect that he had received the letter and understood what it meant. *Id*. at 27.

On September 13, 2013, C.E.G. filed a petition for an injunction prohibiting workplace violence pursuant to the WVROA, naming A.H. as the defendant and G.S. as the threatened employee. C.E.G. attached affidavits from G.S. and the Therapist to the petition. The trial court granted a temporary restraining order, issued a showcause order to G.S., and set a hearing. A.H. filed his response and a motion to exclude all evidence of his statements to the Therapist, including her affidavit and paragraph 11 of G.S.'s affidavit, which referred to what A.H. said to the Therapist. A.H. argued that the evidence was inadmissible because information disclosed to mental health professionals was confidential under Indiana law and a duty to warn did not exist under the circumstances. The trial court granted A.H.'s motion to exclude as to the Therapist's affidavit but denied it as to G.S.'s affidavit. At the hearing, the Director and G.S. testified. A.H. objected to their testimony regarding his communications with the Therapist. A.H. testified that he told the Therapist that he had a dream that he shot G.S. At the conclusion of the hearing, the trial court granted C.E.G.'s petition and issued a permanent injunction prohibiting A.H. from engaging in unlawful violence or making threats of violence against G.S. A.H. appeals.

### Discussion and Decision

C.E.G. filed its petition and the trial court issued the injunction against A.H. pursuant to the WVROA. *See* Ind. Code ch. 34-26-6. A.H. argues that the trial court did not have

jurisdiction to issue the injunction pursuant to the WVROA because the case involves or grows out of a labor dispute and therefore is governed by the AIA. *See* Ind. Code ch. 22-6-1.

The WVROA applies to any credible threat of violence in the workplace.[4] As discussed more fully below, the AIA applies to threats of violence that involve or grow out of a labor dispute. Given that this case involves a threat of violence in the workplace, both the WVROA and the AIA potentially apply. *Nordman v. N. Manchester Foundry, Inc.*, 810 N.E.2d 1071, 1074 (Ind. Ct. App. 2004). However, the WVROA explicitly provides that it "does not apply to a case involving or growing out of a labor dispute covered by [the AIA]." Ind. Code § 34-26-6-0.5. Therefore, if the instant case involves or grows out of a labor dispute as defined by the AIA, we must conclude that the trial court did not have jurisdiction to grant relief pursuant to the WVROA.

To the extent that our analysis of the AIA requires us to engage in statutory interpretation, we are guided by the following rules:

> The primary purpose in statutory interpretation is to ascertain and give effect to the legislature's intent. The best evidence of that intent is the language of the

---

[4] The WVROA permits an employer to petition for an injunction on behalf of an employee to prohibit violence or threats of violence if:

(1) the employee has suffered unlawful violence or a credible threat of violence from the person; and

(2) the unlawful violence has been carried out at the employee's place of work or the credible threat of violence can reasonably be construed to be carried out at the employee's place of work by the person.

Ind. Code § 34-26-6-6. "'[C]redible threat of violence' means a knowing and willful statement or course of conduct that does not serve a legitimate purpose and that causes a reasonable person to fear for the person's safety or for the safety of the person's immediate family." Ind. Code § 34-26-6-2. "If the judge finds by clear and convincing evidence that the defendant engaged in unlawful violence or made a credible threat of violence, the judge shall issue an injunction prohibiting further unlawful violence or credible threats of violence." Ind. Code § 34-26-6-8.

5

statute itself, and we strive to give the words in a statute their plain and ordinary meaning. A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.

*State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008) (citations omitted).

The AIA has been referred to as a "little" or "State" Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq*. *United Steelworkers of Am., AFL-CIO-CLC v. N. Indiana Pub. Serv. Co.*, 436 N.E.2d 826, 829 (Ind. Ct. App. 1982). This Court has observed that the Norris-LaGuardia Act is virtually identical to the AIA and that the purpose and public policy of the two acts are the same. *Id*. at 829 n.2. The AIA was intended to minimize judicial control of labor-related disputes. *Pompey v. Pryner*, 668 N.E.2d 1243, 1248 (Ind. Ct. App. 1996). In light of this purpose, the AIA provides,

> No court of the state of Indiana, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

Ind. Code § 22-6-1-1. The AIA provides a public policy statement as an aid to the interpretation of the act. *Gordon v. Gordon*, 733 N.E.2d 468, 470-71 (Ind. Ct. App. 2000). Indiana Code Section 22-6-1-2 provides,

> In the interpretation of this chapter and in determining the jurisdiction and authority of the courts of the state, as such jurisdiction and authority are defined and limited in this chapter, the public policy of the state is hereby declared as follows:

Whereas, under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership associations, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor or their agents in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definition of and limitations upon the jurisdiction and authority of the courts of the state of Indiana are hereby enacted.

The AIA sets forth the criteria that establish when a case involves or grows out of a labor dispute as follows:

When used in this chapter and for the purpose of this chapter:

(a) A case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation, or have direct or indirect interests therein, or who are employees of the same employer, or who are members of the same or an affiliated organization of employers or employees, whether such dispute is:

(1) between one (1) or more employers or association of employers and one (1) or more employees or association of employees;

(2) between one (1) or more employers or association of employers and one (1) or more employer or association of employers; or

(3) between one (1) or more employees or association of employees and one (1) or more employees or association of employees;

or when the case involves any conflicting or competing interests in a labor dispute (as defined in subsection (c)) of persons participating or interested therein (as defined in subsection (b)).

7

(b) A person or association shall be held to be a "person participating or interested in a labor dispute" if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

Ind. Code § 22-6-1-12.

C.E.G. asserts that this case does not involve or grow out of a labor dispute because the AIA is not intended to apply to individual employee disagreements outside the context of organized labor. C.E.G. contends that "A.H. presents no evidence or argument that he was a union member or that his actions were related to or in concert with organized labor." Appellee's Br. at 11. Therefore, according to C.E.G., the AIA does not apply to A.H.'s situation. To support its position, C.E.G. relies on the public policy statement in Section 22-6-1-2 and the fact that the AIA is based on the Norris-LaGuardia Act. A.H. argues that C.E.G.'s position conflicts with the plain language of the AIA. We agree with A.H.

As relevant to the case before us, the AIA states that "[a] case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation." Ind. Code § 22-6-1-12(a). Because A.H. and G.S. are both employed by C.E.G., they are persons engaged in the same industry. The AIA also states that a case shall be held to involve or grow out of a labor dispute whether such dispute is between *one* employer and *one* employee or *one* employee and *one* employee. Ind. Code §

8

22-6-1-12(a)(1)-(3). Accordingly, whether this case involves C.E.G. and A.H. or G.S. and A.H., it meets this criterion. Finally, the AIA provides that a "labor dispute" includes "*any controversy concerning terms or conditions of employment.*" Ind. Code § 22-6-1-12(c) (emphasis added). This definition does not contain any language suggesting that a "labor dispute" must involve unions or some aspect of collective bargaining. *See Brady v. Nat'l Football League*, 644 F.3d 661, 670-73 (8th Cir. 2011) (discussing meaning of "labor dispute" as defined in Norris-LaGuardia Act and holding that Act did not require present existence of union to establish labor dispute). C.E.G. cites no cases that limit the application of the AIA in the manner it advances. We conclude that a "labor dispute" for purpose of the AIA is not confined to situations involving a union.

As for whether this case involves a controversy concerning terms or conditions of employment, C.E.G. contends that there is no clear evidence that A.H.'s anger toward G.S. was over any terms and conditions of employment, as opposed to something of a personal nature. To the contrary, the evidence shows that A.H.'s alleged threat was made within a few days after A.H. suffered an injury at work, told G.S. that he disagreed with his work assignment and hours, and complained about preferential treatment for one employee. The day before the alleged threat, A.H. complained to G.S. about the lack of respect that he was shown by C.E.G. or its agents. A.H. knew that G.S. disapproved of the way he had expressed his dissatisfaction and that G.S. was going to document his behavior. Finally, on the day of the alleged threat, A.H. informed G.S. that he was seeking a second opinion for his workplace injury and was going to his own doctor rather than to the C.E.G. clinic as G.S. had

9

urged. Accordingly, we conclude that this case concerned a controversy over the terms and conditions of employment. In sum, we conclude that this case involves or grows out of a labor dispute and is governed by the AIA. *Compare Nordman*, 810 N.E.2d at 1075 (concluding that defendant's threat to co-worker who would not join other striking employees involved or grew out of labor dispute even if it could not be characterized as concerning terms and conditions of employment), *and Pompey*, 668 N.E.2d at 1247 (concluding that after employer terminated defendant for noncompliance with collective bargaining agreement and then arbitrator ruled that termination of defendant was improper and reinstated him, employer's request to enjoin employee from coming onto company property and from coming near his supervisor grew out of labor dispute), *with Gordon*, 733 N.E.2d at 471 (concluding that sexual, verbal, and mental abuse of co-worker was of personal nature and not a controversy concerning terms and conditions of employment and therefore did not involve or grow out of labor dispute).

"When equitable relief is sought in the context of a controversy involving labor relations, the trial court must initially inquire as to whether the [AIA] has withdrawn the court's jurisdiction to grant the desired remedy." *Int'l Union of Operating Eng'rs v. Beck*, 669 N.E.2d 441, 443 (Ind. Ct. App. 1996). The AIA withdraws the court's jurisdiction to enjoin certain actions. *See* Ind. Code § 22-6-1-4. However, Section 22-6-1-6(a) of the AIA grants jurisdiction to enjoin "unlawful acts" when specific procedural requirements are followed. A threat of violence against a coworker constitutes an unlawful act within the meaning of the AIA. *Nordman*, 810 N.E.2d at 1075.

10

"The AIA transforms a request for injunctive relief involving parties to a labor dispute into a special statutory proceeding and 'establishes a complex set of procedural requirements which strictly circumscribe the equity jurisdiction of trial courts.'" *Id.* (quoting *Pompey*, 668 N.E.2d at 1248). These procedural requirements are set forth in Indiana Code Section 22-6-1-6(a), which provides,

> No court of the state of Indiana shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect:
>
> (1) that unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
>
> (2) that substantial and irreparable injury to complainant's property will follow;
>
> (3) that as to each item of relief granted injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
>
> (4) that complainant has no adequate remedy at law; and
>
> (5) that the public officer charged with the duty to protect complainant's property is unable or unwilling to furnish adequate protection.

Here, the trial court did not make the necessary findings required by the AIA.

11

Furthermore, C.E.G.'s petition for injunctive relief did not set forth the allegations required by Section 22-6-1-6. "'A plaintiff seeking injunctive relief [pursuant to the AIA] must affirmatively invoke the court's jurisdiction by a verified complaint which alleges all of the factual assertions enumerated by the statute.'" *Nordman*, 810 N.E.2d at 1076 (quoting *Pompey*, 668 N.E.2d at 1248). The requirements set out in the AIA constitute a well-recognized exception to the liberal notice pleading standard of Indiana Trial Rule 8(A). *Id*. When a plaintiff does not fulfill the procedural requirements of the AIA, a trial court does not acquire subject matter jurisdiction to grant injunctive relief. *Id*. When this occurs, the proper remedy is dismissal of the action for lack of subject matter jurisdiction. *Id*. Therefore, we reverse and remand with instructions to dismiss C.E.G.'s petition without prejudice. *See Pompey*, 668 N.E.2d at 1248 (stating that because dismissal is for noncompliance with procedural requirements and not a determination on the merits, dismissal should be without prejudice).

Reversed and remanded.

BAKER, J., and BARNES, J., concur.